UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

Plaintiff,

v.

EXACT CARE PHARMACY, LLC,

Defendant.

---

# COMPLAINT

NOW COMES the Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendant EXACT CARE PHARMACY, LLC, alleges:

1. Plaintiff brings this action to recover for a coordinated telemarketing campaign in which Defendant Exact Care Pharmacy, LLC, directly and/or through persons acting on its behalf, initiated repeated unsolicited telephone calls to Plaintiff's residential and per-call/per-minute-charged telephone lines, used an artificial or prerecorded voice, employed automated dialing and live-transfer technology, transmitted misleading or non-meaningful caller-identification information, solicited Plaintiff regarding Exact Care's prescription-medication delivery services without prior express consent or prior express written consent, and,

after reaching Plaintiff on a number listed on the National Do-Not-Call Registry, sought and used alternate telephone numbers to continue the solicitation, all in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101 *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.125, and the Florida Telemarketing Sales Act ("FTSA"), Fla. Stat. § 501.059.

<u>Parties</u>

2. Plaintiff MARK W. DOBRONSKI ("Dobronski") is an individual, of the age of majority, a citizen of the United States of America, has a domicile in Orange County, Florida, and has a residence in Washtenaw County, Michigan.

3. Defendant EXACT CARE PHARMACY, LLC ("Exact Care") is a limited liability company organized and existing under the laws of the State of Ohio, with a principal office located in Valley View, Ohio, which is registered and qualified to do business in, *inter alia*, the States of Florida and Michigan, with a Michigan registered office located at 186 North Main Street, Floor 2, Suite 1, Plymouth, Michigan 48170.

<u>Jurisdiction</u>

4. This Court has jurisdiction over the subject matter of this complaint

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5. This Court has specific personal jurisdiction over Defendant Exact Care, pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or, doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Venue

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district, to wit: at Plaintiff's residence in Washtenaw County, Michigan.

Preliminary Statement

7. As the Supreme Court recently explained, "Americans passionately disagree among many things. But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

8. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons like Defendant from invading American citizens' privacy and to prevent abusive "robo-calls" by enacting the TCPA.

9. In regard to such telephone solicitations, Senator Hollings of South

Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . these computerized telephone calls threaten our personal safety . . . These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459, 17474, fn. 90, 2002 WL 31083949 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

10. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

11. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

<u>General Allegations</u>

12. Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings,

automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God. Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, some claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

13. Plaintiff's telephone numbers include: ***-***-**00 ("00 Number"), ***-*****25 ("25 Number"), ***-***-**34 ("34 Number"), ***-***-**56 ("56 Number") and ***-***-**98 ("98 Number") (collectively "Plaintiff's Numbers").

14. Plaintiff's Numbers are all telephone numbers for which the service is charged on a per call and per minute basis.

15. Plaintiff's 56 Number is listed on the National Do-Not-Call Registry and has been so listed continuously since May 16, 2025 and at all times subsequent thereto and relevant hereto.

16. Plaintiff's 00 Number is listed on the National Do-Not-Call Registry and has been so listed continuously since June 1, 2004 and at all times subsequent thereto and relevant hereto.

17. Plaintiff uses each of Plaintiff's Numbers for personal, family, and household communications, and not for business purposes.

18. By listing his telephone numbers on the National Do-Not-Call Registry, Plaintiff has given constructive notice to telemarketers and sellers subject to do-not-call, including the Defendant, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone numbers.

19. Plaintiff's telephone service is provided via Voice Over Internet Protocol ("VoIP") technology and interconnects with the public switched telephone network via a broadband Internet connection instead of a conventional telephone line, which allows Plaintiff the ability to answer calls at the residence he is staying at. In the instances of the illegal telemarketing calls alleged in this Complaint, the calls were received by Plaintiff while he was at his residence located in Washtenaw County, Michigan.

20. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations. *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong....").

21. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family

or business calling plan." *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8000-8001, 2015 WL 4387780, at *26, ¶ 73 (2015).

22. Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions. *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3d Cir., 2015).

23. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

24. At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

25. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for the Defendant or anyone acting on behalf of the Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's cellular telephone number.

26. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the

Defendant.

27. The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at. For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (1992).

28. The FCC has further declared that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, if the caller is making calls within the scope of the consent given, and absent instructions to the contrary. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8028, 2015 WL 4387780, at *47, ¶ 141 (2015).

29. At no time has Plaintiff released his phone number to the Defendant in order to have given invitation or permission to be called at that number for any telephone call that includes or introduces an advertisement or constitutes telemarketing, or any call using an automatic telephone dialing system or an artificial or prerecorded voice.

30. Similarly, for purposes of an "established business relationship," the FCC has declared that a consumer inquiry cannot be considered to create a business relationship where the consumer's number has been captured absent that consumer's express invitation or permission to be contacted at the captured number. *In re Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8771, 1992 WL 690928, at *13, n. 67 (1992).

31. Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at *20, ¶ 52 (2015).

32. The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 81 (2015).

33. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶

142 (2003) [Emphasis as in original].

34. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the TCPA, Request of State Farm Mut. Auto. Ins. Co. for Clarification & Declaratory Ruling*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, at *3, ¶ 7 (2005).

35. A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, at *9, ¶ 28 (2013).

36. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by a common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

37. For each and every call alleged herein initiated to Plaintiff's telephone

line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

38. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

39. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff was put to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

40. Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

41. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case,

initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

Allegations Specific to this Complaint

42. Plaintiff pleads the overall specifics of the scheme based upon information and belief formed from Plaintiff's investigation.

43. Defendant Exact Care is a national medication management and pharmacy care provider which is licensed with the Boards of Pharmacy in all 50 states and Washington, D.C. and does business in all of those jurisdictions.

44. Upon information and belief, and based upon the repeated calls described herein, Defendant Exact Care, either directly or through one or more third-party telemarketers or lead generators acting on its behalf, utilized telephone solicitation calls employing a substantially identical prerecorded opening message to identify consumers who use multiple prescription medications and who could be solicited regarding Defendant's medication-delivery services.

45. Upon information and belief, the calls were placed using automated telephone dialing and call-center technology, as evidenced by, among other things, the repeated use of the same prerecorded opening message, the pause or dead air

before a live agent came on the line, the immediate routing of answered calls to live agents, and the repeated attempted transfers of Plaintiff to additional personnel or departments.

46. The pattern of calls further reasonably evidences a call-center workflow in which the initial automated portion of the call was used to engage and preliminarily screen the called party, after which the call was routed to a live agent to gather additional information, continue the solicitation, and attempt to transfer Plaintiff for further sales or enrollment activity.

47. As reflected in the calls at issue, the live agents asked Plaintiff questions concerning the number of medications used, health conditions, insurance information, address, date of birth, and other identifying information in order to determine whether Plaintiff met Defendant's desired customer profile and to advance the solicitation process.

48. The calls further showed that, where Plaintiff was deemed suitable to continue in the process, the agent attempted to transfer Plaintiff to a "pharmacy team" or "shipping team," or otherwise to continue the solicitation through additional personnel, thereby evidencing that the calls were part of a coordinated, multi-step telemarketing campaign rather than isolated or informational contacts.

49. The calls also reasonably evidence a deliberate effort to circumvent

do-not-call protections and obscure the true caller identity. After first reaching Plaintiff on Plaintiff's 56 Number, which was listed on the National Do-Not-Call Registry, Defendant's agents requested alternate telephone numbers, promptly called those alternate numbers to continue the same solicitation, and used caller-identification names that did not meaningfully identify Exact Care, even though agents later identified Exact Care by name and provided Exact Care's callback numbers and Exact Care's Valley View, Ohio address.

50. Numerous consumers have complained to the Better Business Bureau about Defendant Exact Care's calling practices and telemarketing scheme, which complaints appear on the BBB's internet web site, including:

**Initial Complaint**

**Date:** 06/23/2025

**Type:** Service or Repair Issues

**Status:** Resolved

They continue calling when I have asked and submitted requests to be removed from their call list. Don't know how I got on their call list to begin with. They call 10-20 times a day, weekends too.

**Initial Complaint**

**Date:** 03/18/2025

**Type:** Sales and Advertising Issues

**Status:** Unresolved

We keep receiving robocalls from this company, or it's vendor. We actually have one of the calls recorded. Being that we are on the Federal DNC, these calls violate the TCPA. We attempted to reach out to the company, but they failed to take any responsibility, even though when we "played along" with the last call, we were transferred to an actual Exact Care Pharmacy representative. The company is well-aware that this is going on, as they have faced multiple litigations regarding the matter. We need to speak to the company's ATTORNEY or LEGAL REPRESENTATION to resolve this matter. Our next step will be significant legal action. A recording of the last call they made, can be made available upon request.

**Initial Complaint**

**Date:** 12/20/2024

**Type:** Customer Service Issues

**Status:** Answered

Robo calls before 0800MST and solicitation. I have asked several time to have my number removed and stop calling me. They do not even have services I can use.

**Initial Complaint**

**Date:** 06/22/2023

**Type:** Customer Service Issues

**Status:** Answered

I am having problems with a pharmacy delivery service. I have told him over and over to not call me. I block one number they start calling again from a different one I've told them for a year I do not want their service and they won't leave me alone. Name of company Exact care pharmacy. Medication and health info is HIPPA

51. Defendant has also been sued, repeatedly, for its abusive telemarketing practices which are violative of the TCPA, including:

- *Yanosick v. Exact Care Pharmacy, LLC*, Case No. 25-cv-01245 (N.D. Ohio);
- *Taravella v. Exact Care Pharmacy, LLC*, Case No. 25-cv-01692 (W.D. Tex.);
- *Weingrad v. Exact Care Pharmacy, LLC*, Case No. 25-cv-01843 (E.D. Pa.);
- *Lyman v. Exact Care Pharmacy, LLC*, Case No. 24-cv-00694 (N.D. Ohio);
- *Everett v. Exact Care Pharmacy, LLC*, Case No. 23-cv-01649 (M.D. Pa.);
- *Chapman v. Exact Care Pharmacy, LLC*, Case No. 21-cv-01639 (N.D. Ohio).

52. Thus, although Exact Care had been placed on notice by complaints and

litigation alleging materially similar conduct, the same unlawful calling practices have continued.

## The Calls

### Call 1

53. On April 2, 2026, at approximately 10:29 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 56 Number.

54. The caller identification number displayed was 407-946-2308, and the caller identification name displayed was WIRELESS CALLER.

55. Upon answering the incoming call by saying "hello," Plaintiff noted approximately 5 second of silence, then Plaintiff heard a prerecorded voice message state:

> "This is Eva from your pharmacy network. We are sending you free home delivery of your medication box, labeled with time, date, and day. So, I believe you are taking more than 6 medications for your health conditions, such as high blood pressure, high cholesterol, or diabetes. Right?"

56. The call was then transferred to a live agent, who identified herself as "Hi, thanks for holding on the line. My name is Anna, regarding your medications.... We are now providing you the free home delivery of your medications...."

57. Anna asked how many medications Plaintiff takes in a day; Plaintiff

responded eight (8).

58. Anna then asked for a "secondary number... to place on file."

59. Plaintiff provided Plaintiff's 25 Number.

60. Anna then sought Plaintiff's address, health insurance provider, and personal identifying information, including name, and date of birth.

61. Anna then stated that she was going to transfer Plaintiff to "the pharmacy team." Anna then asked if it "was possible for Anna to call Plaintiff at [Plaintiff's 25 Number] in order to complete the process. Anna then called Plaintiff's 25 Number.

62. The fact that Anna asked for an alternate telephone number and then promptly called the alternate telephone number reasonably evidences that Anna knew that Plaintiff's 56 Number was registered on the National Do Not Call Registry.

63. Shortly after the termination of the call, Plaintiff dialed the caller identification number displayed (407-946-2308) to make a do-not-call demand. The dialed number merely rang and was not answered, thus providing no meaningful way to make a do-not-call demand.

**Call 2**

64. On April 2, 2026, at approximately 10:33 A.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 25 Number.

65. The caller identification number displayed was 757-448-2775, and the

caller identification name displayed was NORFOLK ZONE VA.

66. Upon answering the incoming call, Plaintiff was again speaking with Anna.

67. Anna then sought information from Plaintiff's health insurance cards.

68. Anna then stated that she was "connecting the call to [her] pharmacy team" and coached Plaintiff how to answer questions to the "pharmacy team."

69. Anna attempted multiple times to transfer Plaintiff, but each time a recorded message stating "Our apologies, but we cannot complete your call at this time. Error code 3."

70. Anna stated that "due to some technical issues" she could call back tomorrow.

71. Plaintiff asked for Anna's call back number. Anna responded that her call back number was 877-355-7225.

72. Plaintiff asked Anna what company she was with. Anna responded that she was with "Exact Care Pharmacy."

73. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (757-448-2775) to make a do-not-call demand. The dialed number merely rang and was not answered, thus providing no meaningful way to make a do-not-call demand.

**Call 3**

74. On April 2, 2026, at approximately 5:22 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 56 Number.

75. The caller identification number displayed was 407-754-1729, and the caller identification name displayed was AON SERVICES.

76. Upon answering the incoming call by saying "hello," Plaintiff noted approximately 5 second of silence, then Plaintiff heard a prerecorded voice message state:

> "This is Eva from your pharmacy network. We are sending you free home delivery of your medication box, labeled with time, date, and day. So, I believe you are taking more than 6 medications for your health conditions, such as high blood pressure, high cholesterol, or diabetes. Right?"

77. The call was then transferred to a live agent, who stated "Hi. Thank you so much for holding the line. This is Zane. And I'm here to assist you regarding your medications. How are you doing today?"

78. The caller then asked "Besides this phone number which we have on file... do you have an alternate phone number?"

79. Plaintiff provided the caller with Plaintiff's 98 Number.

80. The caller then stated that she was going to call Plaintiff right back on

the alternate number and the call terminated.

81. The fact that Zane asked for an alternate telephone number reasonably evidences that Zane knew that Plaintiff's 56 Number was registered on the National Do Not Call Registry.

82. Shortly after the termination of the call, Plaintiff dialed the caller identification number displayed (407-754-1729) to make a do-not-call demand. The dialed number merely rang and was not answered, thus providing no meaningful way to make a do-not-call demand.

**Call 4**

83. On April 2, 2026, at approximately 5:25 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 98 Number.

84. The caller identification number displayed was 602-922-8868, and the caller identification name displayed was PHOENIX AZ.

85. Upon answering the incoming call, Plaintiff was again speaking with Zane, who began the conversation by stating "Am I speaking with Mister Mark Dobronski? Hello, Mark. This is Zane with Exact Care Pharmacy and we just had the conversation regarding your medications and home delivery. Right?"

86. Zane stated that she was now ready to connect Plaintiff to "the shipping team" but needed Plaintiff to have his Blue Cross Blue Shield card available, and

asked Plaintiff to take the card out of his wallet.

87. Zane then asked Plaintiff for numbers appearing on his Blue Cross Blue Shield card.

88. Zane then provided coaching to Plaintiff about how to answer questions that "the shipping team" was going to be asking Plaintiff.

89. Zane attempted to transfer the call, but a recording was received stating: "Our apologies but we cannot complete your call at this time. Error code 3."

90. Zane abruptly terminated the call.

91. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (602-922-8868) to make a do-not-call demand. The dialed number merely rang and was not answered, thus providing no meaningful way to make a do-not-call demand.

**Call 5**

92. On April 3, 2026, at approximately 12:18 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 56 Number.

93. The caller identification number displayed was 407-801-8975, and the caller identification name displayed was FLORIDA.

94. Upon answering the incoming call by saying "hello," Plaintiff noted approximately 5 second of silence, then Plaintiff heard a prerecorded voice message

state:

> "This is Eva from your pharmacy network. We are sending you free home delivery of your medication box, labeled with time, date, and day. So, I believe you are taking more than 6 medications for your health conditions, such as high blood pressure, high cholesterol, or diabetes. Right?"

95. The call was then transferred to a female live agent who answered by stating "Thanks for the holding the line. Let me help you further regarding your medications. So I believe that you are taking multiple medication, am I right?"

96. The agent then asked "Sir, can you please tell me, besides this phone number, do you have any alternate phone number?"

97. Plaintiff provided the agent with Plaintiff's 34 Number.

98. The agent then stated that she was going to call Plaintiff back "on the other number" and hung up.

99. The fact that the agent asked for an alternate telephone number reasonably evidences that the agent knew that Plaintiff's 56 Number was registered on the National Do Not Call Registry.

100. Shortly after the termination of the call, Plaintiff dialed the caller identification number displayed (407-801-8975) to make a do-not-call demand. The dialed number merely rang and was not answered, thus providing no meaningful way

to make a do-not-call demand.

**Call 6**

101. On April 3, 2026, at approximately 12:21 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 34 Number.

102. The caller identification number displayed was 321-677-2514, and the caller identification name displayed was WEST KISSIMM FL.

103. Upon answering the incoming call by saying "hello," Plaintiff was again speaking with the same female agent from Call 5. The agent did not identify by her name or company name, and instead immediately asked "How many medications do you take in a day?"

104. The agent then began asking more pre-qualifying questions, including insurance carrier, name, and address.

105. Plaintiff inquired as to what company the agent was with, the agent identified "Exact Care Pharmacy."

106. Plaintiff asked for a call back number, the agent provided 844-287-1609.

107. Plaintiff asked for an address for the agent's company, the agent provided "8333 Rockside Road, Valley View, Ohio 44125."

108. Plaintiff asked the agent's name, the agent responded "Marian."

109. Immediately after the termination of the call, Plaintiff dialed the caller

identification number displayed (321-677-2514) to make a do-not-call demand. The dialed number was answered by a recorded message stating "Thanks for the call. Configure your number's voice URL to change this message. Let us know if there is any other way we can help you with further development" and hung up, thus providing no meaningful way to make a do-not-call demand.

110. Shortly after the termination of the call, Plaintiff dialed the call back number provided by "Marian" (844-287-1609). The dialed number was answered by a recorded message stating "Thank you for calling Exact Care Pharmacy...." and the call terminated, thus providing no meaningful way to make a do-not-call demand.

**Call 7**

111. On April 3, 2026, at approximately 3:43 P.M., Defendant or Defendant's agent initiated a telephone call to Plaintiff's 34 Number.

112. The caller identification number displayed was 321-407-5525, and the caller identification name displayed was COCOA FL.

113. Upon answering the incoming call by saying "hello," Plaintiff was again speaking with the same female agent from Call 5 and Call 6, who identified herself as "This is Marian calling you from Exact Care Pharmacy, how are you doing today?"

114. Marian stated "Right now we are just offering you a free home delivery service of your medication, in a good and convenient packaging. So, can you please

tell me, sir, how many medicines are you taking in a day?"

115. Marian stated "And, also sir, as I see here, you are living in the very beautiful State of Florida, correct?.... May I know which private health insurance cover your six, seven prescription? Is it Aetna, Cigna, United Health Care, Blue Cross Blue Shield, like this, sir?"

116. Marian then confirmed Plaintiff's name, and then asked for Plaintiff's address, and birth date.

117. Marian then stated that she was going to transfer Plaintiff to the pharmacy staff, but first she wanted Plaintiff to gather his medications and have them available.

118. Plaintiff explained that Plaintiff was busy and that he would have to call back. Plaintiff asked for Marian's call back number; Marian responded 877-352-2821.

119. Plaintiff asked Marian for her company's address; Marian responded "8333 Rockside Road, Valley View, Ohio 44125."

120. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (321-407-5525) to make a do-not-call demand. The dialed number merely rang one and terminated, thus providing no meaningful way to make a do-not-call demand.

121. Shortly after the termination of the call, Plaintiff dialed the call back number provided by "Marian" (877-352-2821). The dialed number was answered by a recorded message stating "Welcome to ADT Security....," thus providing no meaningful way to make a do-not-call demand.

**COUNT I**
**TCPA - 47 C.F.R. § 64.1200(a)(1)(iii)**

122. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

123. Each of Calls 1 through 7 violated the TCPA, specifically 47 C.F.R. § 64.1200(a)(1)(iii), because Defendant, or persons acting on their behalf, initiated telephone calls, other than for emergency purposes and without the prior express consent of the called party, using an automatic telephone dialing system, to telephone numbers assigned to a service for which Plaintiff is charged for the call.

124. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT II**
**TCPA - 47 C.F.R. § 64.1200(a)(2)**

125. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

126. Each of Calls 1 through 7 violated the TCPA, specifically 47 C.F.R. §

64.1200(a)(2), because Defendant, or persons acting on their behalf, initiated or caused to be initiated telephone calls that included or introduced an advertisement or constituted telemarketing, using an automatic telephone dialing system, to telephone numbers assigned to a service for which Plaintiff is charged for the call, without Plaintiff's prior express written consent.

127. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT III**
**TCPA - 47 C.F.R. § 64.1200(a)(3)**

128. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

129. Each of Calls 1, 3, and 5 violated the TCPA, specifically 47 C.F.R. § 64.1200(a)(3), because Defendant, or persons acting on their behalf, initiated or caused to be initiated telephone calls to Plaintiff's residential line using an artificial or prerecorded voice to deliver a message that included an advertisement or constituted telemarketing, without Plaintiff's prior express written consent and in the absence of any emergency.

130. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT IV**
**TCPA - 47 C.F.R. § 64.1200(a)(7)**

131. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

132. Each of Calls 1, 3, and 5 violated 47 C.F.R. § 64.1200(a)(7), as Defendant abandoned calls by failing to connect Plaintiff to a live sales representative within two seconds of Plaintiff's completed greeting.

133. The fact that all 3 of the 7 voice calls – representing 42.8 percent of the voice calls -- received from Defendant were abandoned infers that Defendant abandoned more than three percent of all answered telemarketing calls during the relevant calling campaign.

134. Defendant's violations were willful and/or knowing.

**COUNT V**
**TCPA - 47 C.F.R. § 64.1200(a)(7)(i)(A)**

135. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

136. Each of Calls 1, 3, and 5 violated 47 C.F.R. § 64.1200(a)(7)(i)(A), as Defendant failed to provide a required prerecorded identification and opt-out message when no live agent was available within two seconds.

137. Defendant's violations were willful and/or knowing.

**COUNT VI**
**TCPA - 47 C.F.R. § 64.1200(a)(7)(i)(B)**

138. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

139. Each of Calls 1, 3, and 5 violated 47 C.F.R. § 64.1200(a)(7)(i)(B), as Defendant failed to provide an automated, interactive opt-out mechanism when no live agent was available within two seconds.

140. Defendant's violations were willful and/or knowing.

**COUNT VII**
**TCPA - 47 C.F.R. § 64.1200(c)(2)**

141. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

142. Plaintiff is a residential telephone subscriber within the meaning of the TCPA and 47 C.F.R. § 64.1200(c)(2). Plaintiff's residential telephone numbers are used for personal, family, and household purposes, and Plaintiff's 56 Number was listed on the national do-not-call registry maintained by the Federal Government at all times relevant hereto.

143. In the instances of Calls 1, 3, and 5, Defendant, or persons acting on Defendant's behalf, initiated telephone solicitations to Plaintiff's 56 Number when said number was listed on the national do-not-call registry, in violation of 47 C.F.R. § 64.1200(c)(2).

144. Calls 2, 4, 6, and 7 were not independent or unrelated calls. Rather, they

were continuation calls in the same telemarketing campaign, placed only after Defendant or its agents had first reached Plaintiff on Plaintiff's 56 Number, which was registered on the national do-not-call registry, and after Defendant's agents requested alternate telephone numbers from Plaintiff so that the solicitation could continue on other lines.

145. By first soliciting Plaintiff on a number listed on the national do-not-call registry, then requesting alternate numbers, then promptly calling those alternate numbers in order to continue the same sales pitch and transfer process, Defendant and its agents demonstrated actual knowledge that Plaintiff was a residential subscriber protected by the do-not-call rules and that Defendant was attempting to evade those protections by shifting the solicitation to Plaintiff's other residential lines.

146. Accordingly, each of Calls 1 through 7 violated 47 C.F.R. § 64.1200(c)(2), because Defendant, or persons acting on its behalf, initiated telephone solicitations to Plaintiff, a residential telephone subscriber who had registered his telephone number on the national do-not-call registry, and then knowingly continued that same solicitation through follow-up calls to Plaintiff's alternate residential telephone numbers in circumvention of the registry's protections.

147. Defendant's violations were willful and/or knowing, as evidenced by, among other things, its agents' requests for alternate numbers immediately after

reaching Plaintiff on a registered number, the prompt follow-up calls to those alternate numbers, and the continuation of the same telemarketing script and qualification process across the calls.

**COUNT VIII**
**TCPA - 47 C.F.R. § 64.1200(d)(4)**

148. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

149. At no time during Calls 1, 3, 5, and 7 did the caller provide the name of the entity on whose behalf the call was being made.

150. At no time during Calls 1, 3, 4, or 5 did the caller provide a telephone number at which the caller or calling entity may be contacted.

151. At no time during Calls 1 through 5 did the caller provide an address at which the person or entity may be contacted.

152. Each of Calls 1 through 5, and 7, violated the TCPA, specifically 47 C.F.R. § 64.1200(d)(4), because Defendant, or persons acting on its behalf, initiated telephone solicitation calls and failed to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and/or a telephone number or address at which the person or entity may be contacted.

153. Defendant's violations were willful and/or knowing.

**COUNT IX**
**TCPA - 47 C.F.R. § 64.1601(e)**

154. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

155. Each of Calls 1 through 7 violated the TCPA, specifically 47 C.F.R. § 64.1601(e), because Defendant failed to transmit meaningful caller identification information, including by transmitting caller identification information that was false, misleading, incomplete, or non-identifying. The names displayed included "Aon Services," "NORFOLK ZONE VA," "PHOENIX AZ," "WEST KISSIMM FL," "COCOA FL," "WIRELESS CALLER," and "FLORIDA," none of which consistently or truthfully identified the actual individual caller or the person or entity on whose behalf the call was being placed.

156. Defendant's violations were willful and/or knowing.

**COUNT X**
**MHSSA**

157. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

158. Plaintiff's 56 Number is a residential telephone number used for personal, family, and household purposes, and was listed on the National Do-Not-Call

Registry at all times relevant hereto.

159. Defendant, either directly and/or through its agents and persons acting on their behalf, made or caused to be made telephone solicitations to Plaintiff in Michigan for the purpose of selling prescription medications.

160. Each of Calls 1, 3, and 5 violated the MHSSA, including M.C.L. § 445.111a, because Defendant, or persons acting on their behalf, made telephone solicitations to Plaintiff while Plaintiff's residential telephone number was listed on the federal do-not-call registry.

**COUNT XI**
**MTCCCA**

161. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

162. Calls 1, 3, and 5 violated the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendant or Defendant's agent used a telephone line to contact a subscriber's residence telephone number to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber and the subscriber has not knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller, or the subscriber has not knowingly and voluntarily provided his telephone number to the caller.

**COUNT XII**
**FTSA**

163. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 121 as though fully set forth herein.

164. Plaintiff is domiciled in Orange County, Florida. Plaintiff's 34 Number bears a Florida 321 area code, and Plaintiff's 56 Number bears a Florida 407 area code; both are Plaintiff's Florida telephone numbers, though answerable by Plaintiff at his Michigan residence through VoIP service.

165. Defendant and/or its agents and persons acting on their behalf, initiated or caused to be initiated telephonic sales calls to Plaintiff's 34 Number and Plaintiff's 56 Number in Calls 1, 3, 5, 6, and 7, and those calls originated from Florida area codes.

166. The calls constituted telephonic sales calls and unsolicited telephonic sales calls within the meaning of Fla. Stat. § 501.059 because they were made for the purpose of soliciting the sale of prescription medications or obtaining information that would be used for the direct solicitation of such sale.

167. Each of Calls 1, 3, 5, 6, and 7 further violated the FTSA by Defendant failing to transmit, or causing not to be transmitted, accurate caller identification information, including the use of the caller-identification name information that did

not provide the true identity of the calling party.

168. Plaintiff did not provide prior express written consent to receive such telephonic sales calls from Defendant or anyone acting on their behalf.

169. The aforesaid FTSA violations were willful and/or knowing.

**PRAYER FOR RELIEF**

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A. Damages:

i. Statutory damages, pursuant to 47 U.S.C. § 227(b)(3), for violations of the TCPA alleged, as follows:

| Count | Violations |
|---|---|
| I | 7 |
| II | 7 |
| III | 3 |
| IV | 3 |
| V | 3 |
| VI | 3 |

A total of 26 violations at $500.00 per violation, for damages of $13,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $39,000.00.

ii. Statutory damages, pursuant to 47 U.S.C. § 227(c)(5), for violations of the TCPA alleged, as follows:

| Count | Violations |
|---|---|
| VII | 7 |
| VIII | 6 |
| IX | 7 |

A total of 20 violations at $500.00 per violation, for damages of $10,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $30,000.00.

iii. Statutory damages, pursuant to M.C.L. § 484.125c(3), for violations of the MHSSA alleged at Count X: 3 violations at $250.00 per violation, for damages of $750.00;

iv. Statutory damages, pursuant to M.C.L. § 484.125(5), for violations of the MTCCCA alleged at Count XI: 3 violations at $1,000.00 per violation, for damages of $3,000.00;

v. Statutory damages, pursuant to Fla. Stat. § 501.059(10)(a)(2) for violations of the FTSA alleged at Count XII: 5 violations at $500.00 per violation, for damages of $1,250.00, which amount shall be trebled, pursuant to Fla. Stat. § 501.059(10)(b), because the violations were willful and/or knowing, for total damages of $7,500.00.

The cumulative total amount of damages claimed in this action is

$80,250.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendant and its agents from initiating any telephone calls to Plaintiff's telephone numbers.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Mark W. Dobronski

Dated: April 5, 2026

Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*